IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CARRON G.,[1] | Case No. 6:23-cv-00654-JR |
|     Plaintiff, | |
| | OPINION AND ORDER |
|     v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
|     Defendant. | |

RUSSO, Magistrate Judge:

    Plaintiff Carron G. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, defendant's decision is reversed, and this case is remanded for the immediate payment of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

# BACKGROUND

Born in 1982, plaintiff alleges disability beginning November 21, 2018, due to latex allergy with anaphylaxis, hyperlordosis, sciatica, left should surgery, asthma, obesity, post-traumatic stress disorder ("PTSD"), hypothyroidism, ovarian cysts and fibroids, and Raynaud's disease. Tr. 101-02. Plaintiff filed her DIB application on February 20, 2020. Tr. 101. Her application was denied initially and upon reconsideration. Tr. 114, 131. Plaintiff then requested a hearing which commenced before an Administrative Law Judge ("ALJ") on July 2, 2021. Tr. 64. The ALJ issued a decision finding plaintiff not disabled on August 31, 2021. Tr. 33-34. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 7-12.

# THE ALJ'S FINDINGS

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 25. At step two, the ALJ determined that plaintiff suffered from the following severe impairments: "asthma and respiratory disorder, left shoulder degenerative joint disease ("DJD"), depressive disorder, trauma, personality disorder, obesity, and latex allergy." Tr. 26. At step three, the ALJ concluded that plaintiff did not have an impairment that meets or medically equals a listed impairment. *Id*.

The ALJ then determined that plaintiff had the residual functional capacity ("RFC") to perform sedentary work except that she:

> Can occasionally balance, stoop, kneel, crouch, and crawl. She must avoid exposure to latex products in the course of work duties. She can perform simple, routine, tasks, and can tolerate incidental work-related contacts with coworkers, supervisors, and the general public. She can tolerate occasional changes to work routines and work processes.

Tr. 28.

At step four, the ALJ concluded that plaintiff is unable to perform any past relevant work. Tr. 32. Finally, at step five, the ALJ determined there were a significant number of jobs in the national economy that plaintiff could perform despite her impairments, such as "document preparer," "ticket counter," and "escort vehicle driver." Tr. 33.

## DISCUSSION

Plaintiff argues the ALJ erred by improperly weighing the medical opinion evidence and rejecting her subjective symptom testimony and the lay witness statements pertaining to her latex allergy. Pl.'s Opening Br. 4-14 (doc. 12). Defendant concedes harmful legal error in the ALJ's "evaluation of plaintiff's latex allergy," such that the sole issue on appeal is the proper legal remedy. Plaintiff asserts a remand for the immediate payment of benefits is warranted because the record is fully developed, plaintiff's latex allergy is well documented and severe, and "latex [is] too widely used to ensure a latex-free work environment" according to the vocational expert's ("VE") testimony. *Id.* at 2. Conversely, the Commissioner asserts further proceedings are warranted due to inconsistencies and ambiguities in the medical record.

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (citations omitted).

Upon review of the record, the Court finds that remand for the immediate payment of benefits is proper. Initially, as noted above, it is undisputed the ALJ neglected to provide legally sufficient reasons, supported by substantial evidence, for affording less weight to plaintiff's subjective symptoms statements, the lay witness testimony, and the medical opinion of Dr. David Knowlton, M.D. Further, the record has been fully developed and there are no outstanding issues, such that further proceedings would not be useful.

The Commissioner argues the Court should remand for further proceedings for three reasons. The Commissioner first argues there are inconsistencies and ambiguities in plaintiff's testimony related to her latex allergy limitations and the evidence in the record. Def.'s Resp. Br. 3 (doc. 19). Second, the Commissioner argues there are inconsistencies and conflicts in the medical opinions and prior administrative medical findings related to plaintiff's latex allergy. *Id.* at 5. Lastly, the Commissioner argues the VE testimony is "incomplete" given "neither the VE nor the ALJ clarified whether "absolutely no proximity" to latex considered situations where latex was present but put away. . . ." *Id.* Defendant asserts "there is significant evidence in the record casting serious doubt on [Plaintiff's] disability claim." *Id.* at 2. Although the Commissioner contends further proceedings are necessary in light of these "inconsistencies and ambiguities" the Commissioner does not actually cite to any factual discrepancies in the record or evidence that casts serious doubt as to whether plaintiff was disabled as of the alleged onset date. *Id.* at 2, 3, 5. Each of the Commissioner's arguments are addressed below.

**A. Plaintiff's Subjective Symptom Testimony**

The Commissioner first asserts that further proceedings are warranted because there are inconsistencies and ambiguities between plaintiff's testimony and evidence in the record. Plaintiff asserts her latex allergy is triggered by both direct contact and "airborne" exposure to latex. Tr.

29, 257, 272. At the hearing, plaintiff testified she must avoid all indoor or outdoor environments containing latex products such as balloons, latex paint, flooring materials containing latex, foods that have been cross contaminated with latex, and even certain clothing materials. Tr. 77-79, 81-84, 86, 96. At the hearing plaintiff testified that she lives a very "sheltered" life. Tr. 79. She explained that before going anywhere she must call beforehand to see if there is latex present, and she wears facial masks to protect herself from airborne latex particles. *Id.* Plaintiff stated she cannot go places by herself because it is difficult and dangerous given her condition. *Id.* When the ALJ asked her how often she leaves the house, plaintiff responded she only leaves to get groceries and she needs them to be delivered to her car, as she cannot walk into a grocery store given that almost all of them sell latex balloons. Tr. 80. She also stated that she likes to take her son to the park, but she must check to see if there is latex beforehand, and she often cannot take him. Tr. 81. She gave examples of instances when she cannot take her son to a park including, if the structure is made of rubber mats, if there are repurposed old tires, or if there is a celebration where balloons are present. *Id.* She testified that her son must constantly wash his hands and change clothes when he goes places and then returns home. *Id.* The ALJ asked her if she had to do any construction work in her house to accommodate her condition, and plaintiff explained that for two years she had to sleep on the couch in the living room because the carpet in her bedroom was contributing to breathing issues. Tr. 83. The walls have been repainted and new flooring installed. Tr. 83-84. In her function report plaintiff indicated that she is no longer able to go to fairs, birthday parties, theme parks, movie theaters, and she no longer visits friends in their homes. Tr. 274.

    The Commissioner argues that inconsistent with these allegations, plaintiff testified that she has been able to enter hospital buildings and emergency rooms to seek treatment. Tr. 85-86. Plaintiff's treating physician Dr. Knowlton, stated "[e]arly on we simply had to put away all the

latex gloves in the exam room when she came in." Tr. 30, 1172. The Commissioner asserts Dr. Knowlton did not identify any additional protective measures needed, despite noting that plaintiff's latex allergy has worsened over time. Def.'s Resp. Br. 4. The Commissioner argues the medical record and plaintiff's subjective symptom testimony are ambiguous as to whether she must avoid entire buildings or rooms that contain latex or whether she can tolerate the presence of latex in a room so long as the latex is put away, similar to the situation described by Dr. Knowlton. Def.'s Resp. Br. 4-5.

The Court is not persuaded by the Commissioner's argument. Dr. Knowlton did identify additional protective measures needed for plaintiff's safety and emphasized multiple times throughout the record that plaintiff's treatment plan is "avoidance of any and all latex" and that plaintiff "will die if exposed to latex." Tr. 426, 507, 1109-10, 1113, 1115-16. Dr. Knowlton's treatment notes repeatedly state that plaintiff has anaphylactic reactions to latex through unintentional, indirect, and subsequent encounters with latex. Tr. 423, 426, 439, 441, 443, 461, 504, 507, 520, 522, 524, 541, 567, 569. The Commissioner mischaracterized Dr. Knowlton's assessment discussing the protective measures he takes when treating plaintiff. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding). (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding).

The Commissioner also argues that plaintiff's testimony that she must avoid indoor and outdoor spaces that contain latex is inconsistent with treatment records from plaintiff's allergist, Dr. Alice Chou, M.D. Def.'s Resp. Br. 4. Dr. Chou stated that avoiding public spaces due to a latex allergy "is not a standard recommendation." Tr. 1145. Dr. Chou instead explained the standard

Page 6 – OPINION AND ORDER

recommendation is for patients to avoid the substances they are allergic to and to keep antihistamines and an EpiPen on hand. Tr. 1145. The Commissioner asserts Dr. Chou's recommendation is inconsistent with plaintiff's allegations that she must avoid all environments and buildings that contain latex, and instead suggest she may be able to tolerate spaces containing latex so long as the latex is put away. Def.'s Resp. Br. 4. The Court is not persuaded by the Commissioner's argument. Dr. Chou's recommendation does not say plaintiff will not have an allergic reaction even if latex products are put away. Dr. Chou simply gave the standard recommendation of avoiding latex products and carrying an EpiPen. Tr. 1145. However, given that plaintiff's latex allergy is severe and triggered by passive exposure to latex, it is nearly impossible to simply avoid latex products. It is evident that Dr. Chou's standard recommendation is nearly impossible to fully comply with in a work setting, which further supports a finding of disability.

Regarding plaintiff's subjective symptom testimony, there are no outstanding issues such that further proceedings would not be useful.

### B. Medical Opinion Evidence

The Commissioner next argues that there are conflicts and inconsistencies in the medical opinions and prior administrative medical findings regarding plaintiff's latex allergy, such that further proceedings are necessary. Def.'s Resp. Br. 5. Specifically, the Commissioner explains that state agency medical consultant Dr. Lloyd Wiggins, M.D., considered the medical evidence related to plaintiff's latex allergy but found she could still perform light work with postural limitations. *Id.* (citing Tr. 127-28). Similarly, state agency medical consultant Dr. Ben Johnson, M.D., found that plaintiff can perform sedentary work with postural restrictions. Tr. 110-11. The Commissioner

asserts that further proceedings are necessary for the ALJ to resolve the conflicts between Dr. Knowlton's opinion and the state agency medical consultants' opinions. Def.'s Resp. Br. 5.

The Court is not persuaded by the Commissioner's argument because the only factual discrepancy the Commissioner identifies is between the medical opinions of plaintiff's physician Dr. Knowlton who indicated plaintiff is significantly functionally limited and unable to work – and the state agency consulting sources. Def.'s Resp. Br. 5. The Commissioner does not actually cite to any factual discrepancies in the record or evidence that casts serious doubt as to whether plaintiff was disabled as of the alleged onset date. *Id.*; *see also Freeman v. Colvin*, 669 Fed.Appx. 861, 861 (9th Cir. 2016) (a "conflict between medical opinions alone does not render evidence ambiguous") (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001)).

Additionally, if Dr. Knowlton's opinion was credited as true, the ALJ would be required to make a finding of disability on remand. Dr. Knowlton explained plaintiff's latex allergy first manifested when she was 15 and has continued to advance overtime due to repeated exposure to latex. Tr. 1172. Dr. Knowlton stated plaintiff's latex allergy has advanced to the point that she has severe anaphylaxis reactions when exposed to even small amounts of latex. *Id.* Dr. Knowlton discussed that plaintiff worked for the school district and reasonable accommodation was attempted, but due to the ubiquitous nature of latex, she continued to have repeated exposures and severe anaphylaxis reactions and ultimately had to end her employment with the school district after working there for 11 years. *Id.* Dr. Knowlton's opinion is consistent with the medical record. A treatment note from February 2019 indicates that Dr. Knowlton stated plaintiff "needs to avoid all latex to the point that her employers cannot adequately provide a latex free environment. . ." Tr. 425. In this same treatment note, Dr. Knowlton indicated plaintiff "is clearly disabled and will likely die if exposed to latex again." Tr. 426. In September 2020, Dr.

Page 8 – OPINION AND ORDER

Knowlton noted "[plaintiff's] diet is extremely complicated because of her severe latex allergy which is complicating her entire life" and "her life is completely upended by this." Tr. 1019, 1021.

The VE, in turn, testified that if plaintiff would have to avoid passive latex exposure, it would eliminate all opportunities for competitive employment. Tr. 91. The VE also emphasized that "there could be numerous objects or materials, supplies in any work setting that could contain latex that we would not be aware of" and that they "would not feel comfortable saying there were any occupation that [plaintiff] could perform" if she had to avoid passive latex exposure. Tr. 91-92.

There are no outstanding issues regarding the medical opinion evidence and further proceedings would not be useful.

**C. VE Testimony**

Lastly, the Commissioner asserts the VE testimony is "incomplete", so further proceedings are necessary. The Commissioner asserts the VE testified it would be work preclusive if an "individual could have absolutely no proximity to latex products." Def.'s Resp. Br. 5, citing Tr. 91. The Commissioner explains that neither the VE nor the ALJ clarified what "absolutely no proximity" to latex means, for example, whether it considers situations where latex was present but put away, like the situation described by Dr. Knowlton. *Id.*

The Court is not persuaded by the Commissioner's argument. As discussed above, multiple medical professionals have instructed plaintiff to avoid exposure to any latex products, and she has had multiple reactions to "airborne" and "passive" exposure to latex. Tr. 336, 423, 438, 506, 571, 632, 1147. Multiple doctors told her there is no treatment or cure for this conditions, except "strict avoidance." Tr. 341, 425, 441, 569, 927, 1147. A treatment note from

Page 9 – OPINION AND ORDER

November 21, 2018, documents that plaintiff had ten anaphylactic reactions that year. Tr. 571. Further proceedings would not be useful because it is evident that plaintiff cannot have even passive exposure to latex given that her allergy is severe and "getting steadily worse," she is affected by airborne latex particles, and her allergic reactions are well documented in the medical record. Tr. 255-56, 258, 297, 425-26, 438, 440, 442, 503-04, 506, 519, 521, 523, 568, 571, 574.

      The VE clearly stated the ALJ's hypothetical of plaintiff avoiding passive exposure to latex would be work preclusive and thus eliminate all employment. The Commissioner does not identify any outstanding factual conflicts in the record or argue why a remand for further proceedings is necessary. The Commissioner's request for further proceedings to "reevaluate" evidence essentially asks the Court for a "second chance," which the Ninth Circuit has repeatedly rejected. See *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication"); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that [the plaintiff] is not credible any more than [the plaintiff], had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). Thus, the Court concludes the record has been fully developed, there are no outstanding issues that must be resolved, and further proceedings would not be useful.

      The record has been fully developed in this case, and there are no conflicts or ambiguities to resolve on remand. Plaintiff's testimony and Dr. Knowlton's medical opinion are both consistent and supported by the record, and the Commissioner failed to identify any conflicts or ambiguities to resolve on remand. Plaintiff's testimony and Dr. Knowlton's medical opinion when viewed in conjunction with the VE's testimony clearly support a finding of disability. Because the Court

does not have serious doubt about whether plaintiff is disabled and sees no reason the ALJ needs another opportunity to evaluate plaintiff's limitations, the Court exercises its discretion and remands this case for an award of benefits.

## CONCLUSION

For the foregoing reasons, defendant's decision is REVERSED, and this case is REMANDED for an immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 25th day of June, 2024.

        /s/ Jolie A. Russo
        Jolie A. Russo
        United States Magistrate Judge